

Case 08-90365    Filed 05/27/10    Doc 786

*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

FILED

MAY 27 2010

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No. 08-90365-D-11 |
| DIABLO GRANDE LIMITED PARTNERSHIP, | Docket Control No. SS-11 |
| Debtor. | Date: May 12, 2010<br>Time: 10:00 a.m.<br>Dept: D |

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.**

## MEMORANDUM DECISION

On March 27, 2010, the Beneficiary Committee appointed under the confirmed chapter 11 plan in this case (the "committee"), filed an objection to the claim of Nicklaus Design and William O'Leary (collectively "Nicklaus Design"). For the reasons set forth below, the court will sustain the objection.

## I. NICKLAUS DESIGN'S CLAIM

On June 5, 1996, Nicklaus Design and Diablo Grande Partnership[1] entered into a Golf Course Agreement (the "Agreement") pursuant to which Nicklaus Design agreed to design a golf course at the debtor's development known as Diablo Grande, in Patterson, California. Paragraph 8 of the Agreement is entitled "Company's Fee." It provides that as compensation, the

---

1. It is assumed by the parties that Diablo Grande Partnership was a predecessor of Diablo Grande Limited Partnership, the debtor in this bankruptcy case (the "debtor"). For ease of reference, the court will use the term "debtor" to refer to Diablo Grande Partnership or Diablo Grande Limited Partnership, whichever was in existence at the time in question.

debtor would pay Nicklaus Design $500,000 in cash installments, the last of which was due 13 months following delivery to the debtor of the plans, specifications, and drawings for the golf course.  Paragraph 8 further provides that in addition to the cash fee, Nicklaus Design would be entitled to select three "estate lots" in the Diablo Grande development, and that the debtor would "register the Estate Lots for transfer and present a group of Estate Lots to Company for selection, not later than one (1) year from the date" of the Agreement.

It is undisputed that the debtor did not transfer the lots within one year from the date of the Agreement or at any other time in the almost 12 years before the debtor filed its petition commencing this case.  In the claim to which the Committee objects, Nicklaus Design asserts a claim in the amount of the value of the three Estate Lots.

> The $500,000 fee is approximately one million dollars less than that charged to other clients by Nicklaus Design for a Jack Nicklaus-designed signature course in 1996; the transfer of the three lots compensated for the discount in the cash fee.

Rider to Proof of Claim of Nicklaus Design and William O'Neal, Claim No. 212 on the court's claim register.

It is clear the three lots were intended as an element of Nicklaus Design's compensation for the design of the golf course.

### II. ANALYSIS

This court has jurisdiction over the objection pursuant to 28 U.S.C. §§ 1334 and 157(b)(1).  The objection is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

The Committee makes three arguments -- (1) that the statute of limitations on the claim for the estate lots ran long before

the bankruptcy case was commenced, (2) that even if it did not, the claim is not allowable as it was filed after the claims bar date in this case, and (3) that the Agreement was not an executory contract subject to the extended claims bar date for executory contract rejection claims.

The court will take these in reverse order. First, on November 20, 2008, the court entered an order including the following: "December 30, 2008 is established as the deadline for the filing of any claims for damages arising out of the Debtor's rejection of (i) [certain itemized contracts] and (2) the Golf Course Agreement." This order specifically set December 30, 2008 as the deadline for the filing of Nicklaus Design's claim, whether arising from an executory contract or not.[2] As the claim was filed on December 29, 2008, it was timely filed. Thus, the court need not determine whether the Agreement was an executory contract.

Turning, then, to the question of the statute of limitations, the court begins by emphasizing that the transfer of the lots was intended by both parties as part of Nicklaus Design's compensation package under the Agreement -- indeed, according to Nicklaus Design, the lots were intended to comprise one million dollars' worth of the fee, double the amount of the cash portion of the fee. Yet for 12 years, Nicklaus Design did not take any action to collect this aspect of the fee. Nicklaus

---

2. The court did not intend use of the word "rejection" in this sentence to imply that the Agreement was an executory contract. Indeed, the motion that generated the November 20, 2008 order did not even mention the Agreement or Nicklaus Design; it is assumed the parties made this addition to the order as an accommodation.

- 3 -

Design argues that this was because "the required permits, approvals, water, roads, etc. were not and are not in place,"[3] and thus, the debtor was never able to transfer the lots.

The court finds that the debtor's failure to transfer the lots within one year from the date of the Agreement constituted a breach of the Agreement, such that the statute of limitations on the breach of contract claim began to run at that time and expired five years later under Florida law,[4] the law governing the Agreement.

Nicklaus Design is correct that under Florida law, time is not of the essence of a contract for the purchase and sale of real property unless the contract expressly so states.

> Time is not of the essence in contracts for the sale and purchase of real estate unless the contract so provides. When a contract for the sale and purchase of land does not make time of the essence as it relates to closing, a party can breach that contract only by refusing to perform after demand that a closing take place at a reasonable time and place.

Heilman v. Repp, 768 So. 2d 1144, 1145 (Fla. 4th DCA 2000), quoting Henry v. Ecker, 415 So. 2d 137, 140 (Fla. 5th DCA 1982).

However, the Agreement was not an agreement for the purchase and sale of real property, under which both parties to the agreement were to perform simultaneously; it was an agreement for the design of a golf course, under which Nicklaus Design performed many years ago and awaited receipt of a substantial portion of its fee for over a decade. When the debtor failed to comply with the fee payment arrangement, Nicklaus Design took no

---

3.  Response of Nicklaus Design to Objection to Claim No. 212, filed May 5, 2010 ("Response"), 3:2-5.

4.  Fla. Stat. § 95.11(2)(b) (2010).

- 4 -

steps to preserve its rights under the Agreement.

Nicklaus Design contends that when it accepts in-kind payments for its services, such as the promise to transfer the estate lots, especially where developments are in their beginning stages, it needs a certain flexibility "to assure that in-kind payments are received in condition suitable for resale at a reasonable price," and for reasons of tax consequences and carrying costs, it must avoid "forcing a premature conveyance of property in a new development."[5] Moreover, making time of the essence of its golf course design agreements would

> force Nicklaus Design to file pre-emptive lawsuits against its developer clients to protect its rights whenever there was a delay in delivery of a payment in kind - a result which could result in serious injury to the value of the ongoing endorsement relationship with the developer which is an essential component to Jack Nicklaus' design engagements and correspondingly diminish the 'bargained for premium' value of the in-kind payment.

Id.

There is no argument or evidence before the court to suggest that such a drastic measure as a preemptive lawsuit would have been necessary. The parties might simply have amended the Agreement to extend the time within which the debtor was required to transfer the lots. The parties might have agreed that the transfer was not required until the debtor had achieved certain benchmarks with regard to the development or they might have agreed to multiple extensions to particular dates. From the record the parties have made, the court concludes that Nicklaus

---

5. Declaration of James H. Schnare II in Support of Response of Nicklaus Design to Objection to Claim No. 212, filed May 5, 2010, ¶4.

Design failed to take any steps to enforce its right to transfer of the estate lots, other than engaging in a few very sporadic communications.[6]

Nicklaus Design cites <u>Barbara G. Banks, P.A. v. Thomas D. Lardin, P.A.</u>, 938 So. 2d 571, 574-76 (Fla. 4th DCA 2006) for the proposition that a breach, as an essential element to a breach of contract cause of action, "cannot be supplied even by the potential defendant's written attempt to repudiate its obligations under a contract unless such repudiation is accepted by the potential plaintiff and the contract terminated by the aggrieved party." Response, 5:6-15. However, that case dealt with an anticipatory breach or repudiation of a contract in advance of the time specified in the contract for performance.[7] The present case does not.

Nicklaus Design also relies on <u>DK Arena, Inc. v. EB Acquisitions I, LLC</u>, 31 So. 3d 313, 2010 Fla. App. LEXIS 4508 (Fla. 4th DCA 2010), in which the court construed a contract for the purchase and sale of real property that was dependent upon local government approval of the purchaser's land use application. The contract provided that the purchaser's deposit

---

6. Nicklaus Design has submitted only two short letters from a principal of the debtor, sent in 2001 and 2002, respectively, and a few e-mails exchanged in 2007 and 2008.

7. In that case, two law firms entered into a contract for the joint representation of a client in a wrongful death case and agreed to split the contingency fee. The court held that one firm's notice to the other, <u>before the wrongful death case was tried</u>, that it would not pay the other its share of the fee did not constitute a breach of contract for purposes of the statute of limitations, but rather, that the breach occurred only after the defendant in the wrongful death case paid the plaintiff and the first firm received the contingency fee. <u>Barbara G. Banks, P.A.</u>, 938 So. 2d at 576-77.

would be released to the seller if, by the end of the due diligence period, the purchaser had not given notice that it intended to terminate the contract. The parties orally agreed to extend the due diligence period for an indefinite time and the seller never thereafter gave notice of withdrawal of his consent to a continued extension. Instead, less than a month after expiration of the original due diligence period, the seller demanded that the escrow company release the buyer's deposit to him and then sued the buyer for breach of contract.

The court emphasized the purchaser's reliance on the oral extension and the seller's failure to give the purchaser notice that he considered the extension over. "Had DK Arena withdrawn its consent to the extension of the due diligence period, EB would have had a reasonable time thereafter in which to terminate the contract." DK Arena, 2010 Fla. App. LEXIS 4508 *27-28.

The circumstances were far different here. Whereas the extension in DK Arena, although indefinite, actually lasted less than one month, in this case, Nicklaus Design failed to assert its right to the lots for over ten years. And whereas the DK Arena buyer was, apparently continuously, working toward the necessary local government approvals and also toward a possible joint venture arrangement with the seller, Nicklaus Design's only "performance" during the ten-year gap period was to permit the debtor use the Nicklaus Design and Jack Nicklaus names, likeness, and logos. Although Nicklaus Design claims it "continued to work with the Debtor to complete and promote the Jack Nicklaus designed golf course in an attempt to preserve the value of the golf course development" (Response, 4:27-5:1), there is no

evidence of any services performed after the golf course was completed, and certainly, no basis on which to conclude that Nicklaus Design "continued to perform for over a decade . . ." (Response, 5:1-5).

### III. Conclusion

The court concludes that the debtor breached the Agreement when it failed to transfer the estate lots within one year from the date of the Agreement, that Nicklaus Design failed to take any steps to preserve its rights under the Agreement, and thus, that the statute of limitations on its claim for the value of the lots expired five years later, well before the bankruptcy case was commenced.

For the reasons set forth above, the court will sustain the committee's objection. The court will issue an appropriate order.

Dated: May 27, 2010

*Robert Bardwil*
ROBERT S. BARDWIL
United States Bankruptcy Judge

Case 08-90365   Filed 05/27/10   Doc 786

**CERTIFICATE OF MAILING**

I, Andrea Lovgren, in the performance of my duties as Deputy Clerk to the Honorable Robert S. Bardwil, mailed by ordinary mail a true copy of the attached document to each of the parties listed below:

Michael Ahrens
Sheppart Mullin Richter & Hampton
4 Embarcadero Center, 17th Floor
San Francisco, CA 94111

Larissa Gotguelf
Corporate Finance & Restructuring FTI
633 West 5th Street, Suite 1600
Los Angeles, CA 90071

Law Offices of Stuppi & Stuppi
1630 North Main Street, Suite 332
Walnut Creek, CA 94596-4609

Marc Levinson
Orrick Herrington & Sutcliffe
400 Capitol Mall, Suite 3000
Sacramento, CA 95814

DATE: MAY 27 2010

_____
Deputy Clerk